**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-80724-CIV-HURLEY**

**RUTH FADDISH individually and as**
**Personal Representative of the Estate of**
**JOHN FADDISH, deceased,**

     **Plaintiff,**

**v.**

**BUFFALO PUMPS, et al.,**

     **Defendants.**
_____/

**MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the court on motions for summary judgment filed by defendants

Warren Pumps, LLC ("Warren Pumps"), Crane Company ("Crane") and Westinghouse Company

(n/k/a CBS Corporation)("Westinghouse")[ECF Nos. 105, 108 and 109]. For reasons outlined

below, the court has determined to grant the motions.

**I.   Procedural Background**

     Defendants Warren Pumps, Crane and Westinghouse made pumps, valves and turbines used

in Navy warships. Ruth Faddish, as personal representative of the Estate of her deceased husband,

John Faddish, filed the above-captioned asbestos case in April, 2008 in Florida state court, alleging

that Faddish developed the asbestos related disease of mesothelioma as a result of exposure to the

defendants' asbestos-containing products while serving in the United States Navy as a fireman

apprentice and fireman aboard the U.S.S. *Essex* between 1958 to 1961. Plaintiff does not contend

that the defendants manufactured or distributed the particular asbestos components and replacement

parts to which the decedent was exposed. Rather, she contends that Faddish died as a result of

exposure to asbestos released from external insulation and internal gaskets and packing, all of which contained asbestos materials manufactured by third parties, and that defendants are appropriately held liable, under negligence and strict liability claims, for failing to warn of known dangers associated with the intended and foreseeable use of those asbestos materials in conjunction with their original products.

The plaintiff's complaint originally named eighteen defendants. On July 3, 2008, defendant Viad Corporation removed the case to this court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which permits removal of "those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed … under color of office." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir.1996).   On September 3, 2008, the United States Judicial Panel on Multidistrict Litigation entered an order conditionally transferring this case to the Eastern District of Pennsylvania for consolidated pre-trial proceedings as part of *In re Asbestos Products Liability Litigation*, MDL-875.

In earlier summary judgment proceedings before that tribunal, District Judge Eduardo Robreno denied the defendants' initial motions for summary judgment on the issue of product identification and causation, finding a genuine issue of material fact as to whether Faddish's exposure to the asbestos-containing products at issue was a "substantial contributing factor" to his injuries. *Faddish v. CBS Corporation (Westinghouse),* 2010 WL 4159238 (E.D. Pa. 2010); *Faddish v. Warren Pumps*, *LLC,* 2010 WL 4178337 (E.D. Pa. 2010); *Faddish v. Buffalo Pumps, Inc. (Crane)*, 2010 WL 3324927 (E.D. Pa. 2010).   On October 3, 2011, the MDL court remanded the case to this court with Crane, Warren Pumps and Westinghouse as the only remaining defendants.

In their current motions for summary judgment, defendants argue that, notwithstanding evidence of the decedent's exposure to the finished product, they cannot be held liable for injuries

2

caused by asbestos products, such as insulation, gaskets, and packing, that were incorporated into their products or used as replacement parts, but which they did not manufacture or distribute. This "bare metal" defense was also raised in the prior summary judgment proceedings before Judge Robreno, who denied this aspect of defendants' motions without prejudice to renew it before this court on remand.

In opposition to the motions, plaintiff argues that even if Faddish was not exposed to asbestos released from a product manufactured or distributed by Crane, Warren Pumps or Westinghouse, these manufacturers bear responsibility for his injuries because their products originally included asbestos-containing components, or were intended to be used in conjunction with asbestos-containing materials, and it was foreseeable that repair, replacement and maintenance procedures performed by Faddish on these products would release harmful asbestos dust.

## II. Factual Background[1]

As a fireman apprentice and then a fireman aboard the *Essex,* Mr. Faddish was responsible for general maintenance and cleaning in the engine room of the ship. His job duties included wiping dust from the outside of turbines, pumps, general machinery, steam lines and generators. He also performed "instructional maintenance" on the turbines, which were externally insulated, under the supervision of his superiors. This included repacking pumps and replacing gaskets on the pumps. He also cleaned turbine casings three to five times a week and assisted in maintenance of these turbines, including the replacement of gaskets. This work exposed him to airborne asbestos fibers.

---

[1] The facts recited are those established by the evidence, taken in the light most favorable to the non-movant plaintiff, and the inferences reasonably drawn from those facts. *See generally Ledford v Peeples*, 657 F.3d 1222 (11th Cir. 2011). The recitation is drawn primarily from the parties' statements of undisputed material facts; Mr. Faddish's deposition testimony; expert depositions, affidavits and/or reports of Arnold Moore; Samuel Forman, and Roger Horne, and stipulations of counsel made at oral argument.

This work also brought him into contact with valves, pumps and turbines manufactured by defendants Crane, Warren Pumps and Westinghouse, which products used, and in some cases were originally distributed with, asbestos-containing internal components (gaskets or packing) or external insulation. Any asbestos-containing gaskets and packing originally supplied with the pumps, valves and turbines had been replaced long before Faddish boarded the ship in the late 1950's.  Consequently, all of Faddish's asbestos exposure was to replacement parts manufactured by other companies.

It is undisputed that the Navy was the source of specifications which mandated the use of asbestos-containing insulation and internal components in conjunction with the defendants' products. While the defendants knew, based on the Navy's design specifications, that the Navy or its shipbuilder would affix asbestos-containing insulation to some or all of their products aboard the *Essex*, all defendants supplied their products "bare iron," i.e. without insulation.

Although the defendants did supply certain warnings with their products, none supplied warnings of the dangers of asbestos inhalation, even though both the Navy and the defendants knew that asbestos posed significant health risks before the *Essex* was built. Indeed, by 1922, the Navy knew that inhalation of asbestos could cause lung cancer, and by the 1940's had prescribed industrial hygiene measures to prevent or minimize the risk of asbestos-related illness.

In October 2007, approximately forty-six years after he worked on the *Essex*, Faddish developed mesothelioma, a fatal cancer of the lining of the lung caused by asbestos exposure.   He died from this disease on January 26, 2009.

4

## II.  Discussion

### A.  Summary Judgment Standard of Review

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Haves v. City of Miami,* 52 F.3d 918 (11th Cir. 1995).  A "mere scintilla" of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment. *Young v. City of Palm Bay, Fla*., 358 F.3d 859 (11th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Allen v. Tyson Foods, Inc*. 121 F.3d 642 (11th Cir. 1997).  Once the moving party meets its burden of production, the burden shifts to the opposing party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  "Speculation does not create a genuine issue of act," *id.,* and "[a] mere scintilla of evidence supporting the opposing party's position will not suffice; a factual dispute is genuine only if the evidence is such a reasonable jury could find in favor of the nonmoving party." *Anderson*, 477 U.S. at 248; *Brooks v. County Comm'n of Jefferson County, Ala.,* 446 F.3d 1160, 1162 (11th Cir. 2006).

Finally, in assessing whether the movant has met its burden, the court must resolve all ambiguities and draw all reasonable factual inferences from the record evidence in favor of the non-moving party, *Denney v. City of Albany*, 247 F.3d 1172 (11th Cir. 2001); *Layton v. DHL*

*Express (USA), Inc.*, ___ F.3d ___, 2012 WL 2687961 (11th Cir. 2012); *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008), mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255.

### B. Applicable law (maritime vs. state law)[1]

As a threshold choice of law question, the parties dispute whether maritime or Florida law should apply to plaintiff's negligence and strict liability failure to warn claims. Citing the jurisdictional test outlined in *Cochran v. E.I. DuPont de Nemours,* 933 F.2d 1533 (11th Cir. 1991), plaintiff argues that the duty issue raised by the defendants' "bare metal defense" is appropriately governed by Florida law because there is insufficient connection between Faddish's exposure to asbestos and traditional maritime activities involving navigation or commerce on navigable waters to warrant invocation of maritime law.

Defendants Warren Pumps and Crane contend that the multi-factor "*Kelly*" test on which *Cochran* relies was specifically displaced by subsequent Supreme Court authority in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534-40, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995). *See e.g. Conner v Alfa Laval, Inc.,* 799 F Supp. 2d 455, 464 (E.D. Pa. 2011) (listing *Cochran* as one of several decisions "made under the *Kelly* framework … that the *Grubart* court expressly disavowed"). Urging application of the present-day *Grubart* locality test and

---

[1] In prior summary judgment proceedings in MDL-875, Judge Robreno concluded, following the recommendation of the magistrate judicial panel to which the choice of law analysis had been referred, that Florida law governed resolution of the causation and product identification issues raised at that stage of the proceedings. Noting that the transferee court in multidistrict litigation is required to apply the same state substantive law, including choice of law rules, that would have been applied in the jurisdiction in which the case was filed, and that a conflict of law analysis is unnecessary under Florida law if there is a "false conflict" (i.e. where the law of the interested jurisdictions is the same), the panel concluded that Florida law applied to the issues raised in the initial summary judgment motions. *Faddish v Warren Pumps*, 2010 WL 4178337 *3 n.3 (E.D. Pa. 2010); *Faddish v Buffalo Pumps, Inc.* (Crane), 2010 WL 3324927*3 n. 3 (E.D. Pa. 2010); *Faddish v CBS Corporation (Westinghouse)*, 2010 WL 4159238 (E.D. Pa. 2010).

connection test, defendants argue that this case falls squarely within the scope of this court's admiralty jurisdiction, triggering application of the 'bare metal' defense recently evolved under maritime law.   Defendant Westinghouse agrees that the location and connection tests of *Grubart* are satisfied here, but ultimately urges that a conflict analysis is unnecessary because application of either body of law leads to the same result.

Where a case sounds in admiralty, application of state law, including a choice of law analysis under the forum state's choice of law rules, would be inappropriate.   *Gibbs ex rel. Gibbs v. Carnival Cruise Lines,* 314 F.3d 125 (3d Cir. 2002). In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury is caused by a vessel on navigable waters. *Grubart,* 513 U.S. at 534.   Work performed aboard a ship that is docked at a shipyard is considered sea- based work, performed on navigable waters. *See Sisson v Ruby*, 497 U.S. 358 (1990). This includes work aboard a ship that is in "dry dock." *See Deuber v Asbestos Corp Ltd*., 2011 WL 6415339 *1 n.1 (E.D. Pa. 2011). In contrast, work performed in other areas of the shipyard, or on a dock, such as a machine shop in the shipyard, is considered land-based work. *Id.*

The connection test requires that the incident could have "a potentially disruptive impact on maritime commerce," and that the "general character" of the "activity giving rise to the incident" shows a "substantial relationship" to traditional maritime activities. *Grubart,* 513 U.S. at 534, citing *Sisson, v Ruby*, 497 U.S. 358, 364, 365 n.2; 110 S. Ct. 2892, 111 L.Ed.2d 292 (1990).   *See generally Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S. Ct. 493, 34 L.Ed.2d 454 (1972).

7

If a service member in the Navy suffering asbestos exposure performed some work at shipyards or docks (i.e. on land), and some work onboard a ship on navigable waters (i.e. in a ship docked at the shipyard), the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters. *Conner* at 466.   If however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies. *Id.*

Where a worker whose claims meet the locality test was primarily sea based during the asbestos exposure, those claims will almost always meet the connection test necessary for application of maritime law.   *Conner v Alfa Laval, Inc*., 799 FF. Sup. 2d 455, 467-49 (E.D. Pa. 2011), citing *Grubart*, 513 U.S. at 534; Reynolds *v. General Electric Co.,* 2012 WL 2835500 (E.D. Pa. 2012). On the other hand, if the worker's exposure was primarily land based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies.   In cases where there are distinct periods of different types of exposure, the court may apply two different laws to the different types of exposure.   *Id.*

In this case, it is undisputed that all of the alleged asbestos exposure pertinent to the defendants' products occurred aboard the *Essex* during Faddish's service in the Navy as a fireman apprentice and fireman aboard that ship.   Therefore, his exposure is sea-based work bearing sufficient connection to traditional maritime activities to warrant imposition of maritime law.   *See e.g. Alderman v. Pacific Northern Victor, Inc*. 95 F.3d 1061 (11th Cir. 1996) (Fla) (onboard injury suffered by carpenter assisting in installation of elevator aboard vessel satisfied requirement of admiralty tort jurisdiction of potentially disruptive impact on maritime commerce).   *See generally East River Steamship Corp v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S. Ct. 2295, 90

L.Ed.2d 865 (U.S. 1986). Accordingly, maritime law is applicable to plaintiff's claims against the defendants in this action.

Although a federal court customarily applies the choice of law rules of the forum in which it is located, the court in maritime cases must apply general federal maritime choice of law rules. *See St. Paul Fire & Marine Ins. Co. v. Board of Commissioners of the Port of News Orleans*, 418 Fed. Appx. 305, 2011 WL 890934 (5th Cir. 2011); *Albany Insurance Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991). In turn, under traditional admiralty choice of law rules, where the state rule does not conflict with any substantive principles of federal admiralty law, the court appropriately applies state law.[1] *See Calhoun v. Yamaha Motor Corp., U.S.A.,* 40 F.3d 622 (3d Cir. 1994). Put another way, courts in admiralty cases may reach beyond maritime precedents and apply state law "absent a clear conflict with the federal law." *Askew v. America Waterways Operators, Inc*. 411 U.S. 325, 93 S. Ct. 1590, 36 L.Ed.2d 280 (1973). *See also Floyd v. Lykes Bros. Steamship Co.*, 844 F.2d 1044, 1046-47 (3d Cir. 1988) (state law may supplement maritime law when maritime law is silent or a local matter is at issue, but state law may not be applied where it would conflict with maritime law); C*entennial Ins. Co. v. Lithotech Sales, LLC*, 29 Fed. Appx. 835, 836 (3d Cir. 2002) (maritime law displaces only inconsistent state law); *Dadgostar v. St Croix Financial Center, Inc.,* 2011 WL 4383424 (D. Virgin Islands 2011).

---

[1] This rule finds parallel in Florida's "false conflict" choice of law rule. Under the Florida rule, when the laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states. *Fioretti v. Massachusetts General Life Ins. Co*., 53 F.3d 1228, 1234 (11th Cir.1995). Alternatively, where a "false conflict" presents, the court may simply apply the law of the forum state, an approach which "enjoy[s] the additional virtue[] of being more streamlined and less time-consuming, since only one body of law need be employed to resolve the dispute. *Id*. at 1234 n. 21.

Thus, in the context of this case, Florida law is appropriately applied unless it conflicts with the substantive rule of federal admiralty law. The analysis therefore turns to a comparison of admiralty law and Florida law on the substance of the "bare metal" defense raised in this action.

The "bare metal defense" recognized under maritime law, drawing from an amalgam of development of products liability law, under both admiralty and traditional state common law, posits that a manufacturer has no duty to warn about hazards associated with a product it did not manufacture or distribute. *See Lindstrom v. A-C Product Liability Trust,* 424 F.3d 488 (6th Cir. 2005) (pump manufacturers could not be liable for asbestos-containing material attached to their products post-manufacture); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791 (E. D Pa. 2012), and cases cited *infra.*   Florida appellate courts have not specifically considered the viability of the "bare metal" defense in the context of asbestos-related claims brought against "bare iron" equipment suppliers such as the defendants in this case.   In the absence of such guidance, the court must predict how the Florida Supreme Court would rule if faced with the same issue. *Molinos Valle Del Cibao, C. por A v. Lama*, 633 F.3d 1330 (11th Cir. 2011).   Upon review of the policies underlying the applicable legal doctrines, the trends indicated by those policies, and the expressions of those trends   in lower state court decisions, the court concludes that the "bare metal" defense   is a logical application and outgrowth of well-established precepts of Florida products liability law and policies, as more particularly discussed below.

Recognizing these parallel bodies of law, the court agrees that there is no inconsistency between Florida substantive law and maritime law on the central duty issue posed.   Therefore, under application of traditional admiralty choice of law principles, the court shall apply he

substantive laws of Florida as the sole interested state identified in this matter.[1]  *Grubart*, supra at 545-46.

## B.   Florida Products Liability Law: A Manufacturer's Duty to Warn

Under the law of negligence, a defendant's duty is to exercise ordinary care. In the products liability arena, a manufacturer's duty of ordinary care includes a duty to give appropriate warnings about risks involved in the reasonably foreseeable use of its product.   A "negligent failure to warn" is defined under Florida law as "the failure to use reasonable care, which is the care that a reasonably careful manufacturer would use under like circumstances." "Reasonable care on the part of [a manufacturer] requires that the [manufacturer] give appropriate warnings about the particular risks of the product which the [manufacturer] knew or should have known are involved in the reasonably foreseeable use of the product."   Florida Standard Jury Instruction (Civ.) PL. 403.10 (Negligent Failure to Warn)(new), *In re Standard Jury Instructions in Civil Cases- Report No. 09-10 (Products Liability)*, ___ So .2d ___, 2012 WL 1722576 (Fla. May 17, 2012), citing Restatement (Second) of Torts, 402A(a). *See generally Toole v. Baxter Healthcare Corp,* 235 F.3d 1307 (11th Cir. 2000) (Ga.).

Under the rule of strict liability adopted in *West v. Caterpillar Tractor Co*., 336 So.2d 80 (Fla.1976), a product may be defective by virtue of a design defect, manufacturing defect, or an inadequate warning. *Jennings v. BIC Corp*., 181 F.3d 1250 (11th Cir. 1999), citing *Ferayorni v Hyundai Motor Co*., 711 So.2d 1167 (Fla. 4th DCA 1998).   *See e.g. Brown v. Glade and Grove Supply, Inc.,* 647 So.2d 1033 (Fla. 4th DCA 1994); *Giddens v. Denman Rubber Mfg. Co*., 440 So.2d

---

[1] Notably, no party advances the application of the substantive law of any state other than Florida. Therefore, the law of Florida, as the substantive law of the forum, shall control. *National Assn. of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp*., 779 F. 2d 1281 (7th Cir. 1985), citing *Gonzalez v Volvo of America Corp.,* 752 F.2d 295 (7th Cir. 1985) (where parties fail to raise a possible conflict of substantive law, the substantive law of the forum controls).

1320, 1323 (Fla. 5th DCA 1983) (an "otherwise safe product" may be "defective" solely by virtue of an inadequate warning). The rationale underpinning the general rule of strict liability is that it logically and fairly places the loss caused by a defective product on those who create the risk and reap the profit by placing such a product in the stream of commerce, with the expectation that these entities have the greatest incentive and resources to control and spread the risk of harm posed by the product.

In the strict liability context, an actionable "failure to warn" has been described as a failure to adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.  *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337 (M.D. Fla. 2003), citing *Ferayorni v. Hyundai Motor Co.,* 711 So.2d 1167, 1172 (Fla. 4th DCA 1998), following *Anderson v. Owens Corning Fiberglas Corp*, 53 Cal. 3d 987, 281 Cal. Rptr 528, 281 Cal Rptr 528, 819 P.2d 549, 558 (1991).   Under a more recent formulation of the rule, receiving preliminary approval from the Florida Supreme Court, a "strict liability" failure to warn is defined as a failure to warn of "foreseeable risks of harm from the product which could have been reduced or avoided by providing reasonable instructions or warnings." Florida Standard Jury Instruction  PL  403.8 (new); *In re Standard Jury Instruction in Civil Cases, Report No. 009-10 (Products Liability)*, ___ So.3d _____, 2012 WL 1722576 (Fla. May ___, 2012), citing *McConnell v. Union Carbide Corp.,* 937 So.2d 148 (Fla. 4th DCA 2006); *Union Carbide Corp v. Kavanaugh*, 879 So.2d 42 (Fla. 4th DCA 2004); *Scheman-Gonzalez v. Saber Manufacturing Co*., 816 So.2d 1133 (Fla. 4th DCA 2002); *Ferayorni v. Hyundai Motor Co.,* 711 So.2d 1167, 1170 (Fla. 4th DCA 1998).  This mirrors the

formulation articulated at Section 2(c) of the Restatement (Third) of Torts: Products Liability which provides that a product:

> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

A strict liability failure to warn is distinct from a negligent failure to warn. A negligent failure to warn case requires a plaintiff to prove that a manufacturer or distributor failed to take care and provide warnings that a reasonably careful manufacturer would have known and warned about. Thus, in a negligent failure to warn case, the focus is on the conduct of the defendant. *Ferayorni* at 1172. Strict liability is not concerned with the reasonableness of a manufacturer's conduct in comparison to that of others in the industry. Under strict liability, the focus is on the product itself and the reasonable expectations of the consumer. *See e.g. McConnell v. Union Carbide Corp.,* 937 So.2d 148  (Fla. 4th DCA 2006)(carpenter who contracted asbestosis from inhalation of asbestos fibers during use of joint compound incorporating processed asbestos was entitled to 'consumer expectations' jury instruction in strict liability failure to warn action).

Although a literal reading of 402A, adopted by Florida Supreme Court in *West*, would limit strict liability to manufacturers of defective products, "in consonance with comment (f) to section 402A, the doctrine has been extended by Florida courts to all distributors of the product," including sellers, wholesalers, retail dealers, distributors and manufacturers. *Porter v Rosenberg*, 650 So .2d 79 (Fla. 4th DCA 1995), citing *Adobe Bldg. Ctrs., Inc. v Reynolds*, 403 So.2d 1033 (Fla. 4th DCA), *rev dismissed*, 411 So.2d 380 (Fla. 19891); *Visnoski v J.C. Penney Co*., 477 So.2d 29 (Fla. 2d DCA

1985); *Perry v Luby Chevrolet, Inc*., 446 So.2d 1150 (Fla. 3d DCA 1984). The rationale for targeting all entities in the chain of distribution is that "[t]hey are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." *Vandermark v Ford Motor Co*, 61 Cal. 2d 256, 262, 37 Cal. Rptr. 896, 391 P.2d 168 (1964).

The rule extends even to those distributors whose defective product is traceable to a defective component part manufactured by another which is integrated in the defendant's end product. *Favors v. Firestone Tire & Rubber Co.,* 309 So.2d 69 (Fla. 4th DCA 1975) (truck manufacturer considered manufacturer of defective truck wheel and rim assembly manufactured by another which was integrated in truck). However, the converse is not true: A component part manufacturer is generally not liable for harm caused by the defective condition of the end product into which the component is integrated, with two narrow exceptions -- (1) where the component is itself defective or (2) where the component part manufacturer substantially participated in the integration of the component into the design of the finished product.   *See Union Carbide Corp. v. Aubin,* __ So. 3d __, 2012 WL 2327751 (Fla. 3d DCA June 20, 2012), following Restatement (Third) of Torts: Products Liability § 5; *Scheman-Gonzalez v Saber Manufacturing Co*, 816 So.2d 1133 (Fla. 4th DCA 2002) (same). Where neither exception is applicable, there is no duty to warn of potential dangers that may attend integration of the component part or product into the end product or entire system, *regardless of the foreseeability of harm* caused by the predictable and combined use of the products. *Compare Kohler Co. v. Marcotte,* 907 So.2d 596 (Fla. 3d DCA 2005) (manufacturer of engine that was component part of riding lawn mower not liable for injury to child whose  hand  came into contact with unguarded rotating plastic intake screen on engine, where

14

defendant knew of intended end use of its product but did not participate in integration of engine into lawn mower) *with Scheman-Gonzalez v. Saber Manufacturing Co*, 816 So.2d 1133 (Fla. 4th DCA 2002) (manufacturer of wheel rim potentially liable under component part doctrine if rim itself was defective).  *See also Kealoha v E.I. du Pont de Nemours and Co.,* 82 F.3d 894 (9th Cir. 1996)(Hawaii)(alleged foreseeability of risk of finished product is irrelevant to determining liability of component part manufacturer; manufacturer of non-defective component part has no duty, under 'raw material supplier defense,' to analyze dangerousness of design and assembly of completed product of unrelated manufacturer); *In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation*, 97 F.3d 1050 (8th Cir. 1996)(foreseeability of risk of finished product is irrelevant to determining liability of inherently safe component part manufacturer).

In short, a manufacturer's duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from *other* manufacturer's products, regardless of the foreseeability of the combined use and attendant risk.   In this sense, products liability diverges from broad spectrum negligence liability where the general duty of care is largely defined and driven by the foreseeability of risk within the context of defined legal relationships. S*ee generally McCain v. Florida Power Corp*., 593 So.2d 500 (Fla. 1992). Under the "foreseeable zone of risk" analytical paradigm set out in *McCain*, a duty to warn or protect against criminal conduct precipitated by third persons may arise where the risk is foreseeable to defendant, regardless of defendant's control over instrumentality or person causing the harm.  *See e.g. United States v. Stevens*, 994 So.2d 1062 (Fla. 2008)(laboratory owed a duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of bio-hazardous materials); *Herndon v. Shands Teaching Hospital and Clinics, Inc.,*   23 So.3d 802 (Fla. 1st DCA

15

2009)(hospital owed duty of care to members of general public to prevent theft and removal of drugs without a doctor's authorization); *Borda v. East Coast Entertainment, Inc*., 950 So.2d 488 (Fla. 4th DCA 2007) (club owed duty of care to   protect patron against foreseeable risk of criminal assault created by ejection of patron and her assailant from bar).

In the products liability arena, the lines of liability are more narrowly drawn. Regardless of the foreseeability risk, here the duty to act is limited to entities within a product's chain of distribution on theory that these are the entities best motivated and capable of controlling the risk. *See e.g. Samuel Friedland Family Enterprises v Amoroso,* 630 So.2d 1067 (Fla. 1994)(extending doctrine of strict liability to commercial tenant that owned allegedly defective sailboat leased to hotel patron by sub-tenant and hotel landlord that effectively represented to guest that sailboat rental stand was part of hotel operations);   *Hunnings v. Texaco, Inc*. 29 F.3d 1480 (11th Cir. 1994)(Fla.) (bulk distributor of commodity inherently burdened with potential danger has duty to take reasonable precautions   to supply users with adequate warning of potential harmful consequences attendant to use); *Ugaz v American Airlines, Inc.,* 576 F. Supp.2d 1354 (S.D. Fla. 2008)(proper defendants   in negligence or strict liability claims are manufacturers and others in chain of distribution); *Lane v. International Paper Co.,*   545 So.2d 484 (Fla. 1st DCA 1989)(on any theory of products liability, plaintiff must show that defendant is in the business and gains profits from the distribution and sale of product through the stream of commerce),   *rev. den*, 553 So.2d 1165 (Fla. 1989); *Johnson v Supro Corp.*, 498 So.2d 528 (Fla. 3d DCA 1986)(same); *Rivera v Baby Trend, Inc.,*   914 So.2d 1102 (Fla. 4th DCA 2005) (relevant query in products liability action is whether defendant placed product in stream of commerce, is in position to control risk of harm product might

cause once put into stream of commerce, or either created or assumed risk of harm for defective product).

A number of state courts considering the application of this limitation in asbestos product litigation have concluded that a defendant manufacturer is not liable for a third party's asbestos-containing products when the defendant is not within the 'chain of distribution' of the asbestos product. *See O'Neil v Crane Co.,* 53 Cal. 4th 335, 266 P.3d 987, 135 Cal. Rptr. 3d 288 (Cal. Jan. 12, 2012)(manufacturer of valves and pumps used on aircraft carrier owed no duty to warn officer of dangers of asbestos containing products where defendant's own product did not contribute substantially to causing harm and defendant did not substantially participate in creating harmful combined use of products); *Simonetta v Viad Corp.,* 165 Wash.2d 341, 197 P.3d 127 (Wash. 2008)(*en banc*)(manufacturer did not have duty to warn of danger posed by asbestos insulation that it did not manufacture sell or supply, even though evaporator, used for salinization of sea water on navy ship, was built with knowledge that insulation was required for proper operation); *Taylor v Elliott Turbomachinery Co*., 171 Cal. App 4th 564, 571-572 , 90 Cal. Rptr 3d 414 (Cal. App. 1 Dist. 2009)(pump and value manufacturers could not strictly liable for failure to warn about danger of asbestos exposure because duty to warn is limited to entities in chain of distribution of defective product; there is generally no duty to warn of defects in products supplied by others and used in conjunction with product; and component part manufacturer doctrine limits liability of manufacturer to cases where defect in component caused injury or where manufacturer participated in integration of part in end product).   Predicting that the Florida Supreme Court would follow this trend, this court likewise concludes that the defendant 'bare metal' suppliers cannot be liable for a third party's asbestos containing products under the facts presented in this case.

17

### Application

In this case, it is undisputed that defendants sold their product to Navy without insulation and did not manufacture sell or select the asbestos insulation ultimately used with their products on the *Essex*.   Although there is evidence that the defendants valves, pumps and turbines contained internal asbestos containing gaskets and packing when the *Essex* was built, these original component had been replaced long before Faddish boarded the ship in 1958.   There is no evidence that any of these replacement parts was made by any defendant or that defendants had any involvement with their installation. Accordingly, there is no evidence that any of the asbestos containing dust to which Faddish was exposed came from a product made by Crane, Warren or Westinghouse.

On this predicate,   where the source of asbestos specifications originated with the Navy, where defendants' own products were not inherently dangerous [1] and did not contribute substantially to causing the harm, and where defendants did not participate substantially   in integration of their "bare metal" products into the end design of systems aboard the *Essex*, the court finds no basis under Florida law for imposing a duty to warn of the risk of injury posed by the concededly foreseeable use of asbestos -containing materials in conjunction with defendants' products. *See e.g. In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055 (N.D. Cal. 2005)(airplane manufacturer   had no duty to   warn airlines or passengers about risk of injury from unsafe seating designs where airlines purchases seating from separate manufacturing and installed seats without Boeing's involvement). *Cf. In re*

---

[1] *See McConnell v. Union Carbide Corp.,* 937 So.2d 148   (Fla. 4th DCA 2006) (supplier of dangerous product, such as processed asbestos product, an intrinsically dangerous product, had duty to warn end user of dangers posed by integration of product in joint compound); *Union Carbide Corp v Aubin*, __ So. 3d ___, 2012 WL 2327751 (Fla. 3d DCA 2012)(finding jury question as to whether chrysotile asbestosis manufacturer discharged duty to warn end users by adequately warning intermediary manufacturers (and relying on them to warn end users) with respect to warning defect claim   of laborer who routinely handled joint compounds containing product)

*Asbestos Litigation*, 2012 WL 1408982 (Del. Super. April 2, 2012)(denying summary judgment as to Crane valves which contained asbestos -containing parts when sold, where there was issue as to whether plaintiff was exposed to original asbestos-containing products, while finding no duty to warn under Utah law for asbestos-containing products added to products post sale) with *Bettencourt v. Hennessey Industries, Inc.*, 205 Cal. App.4[th] 1103, 141 Cal. Rptr.3d 167, 2012 WL 1570763 (Cal. App 1st Dist. May 4, 2012) (manufacturer of brake shoe grinding machine, the sole and intended purpose of which was to grind asbestos- containing brake linings, could be liable for failure to warn of dangers of airborne asbestos fibers where use of machine to grind such linings was inevitable use of product).

### Conclusion

The justification for imposition of strict product liability is that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility   toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in cases of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products is best placed on manufacturers and other entities behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production. Restatement (Second) of Torts § 402A, comment c (1985). [1] It is a rule designed to encourage manufacturer accountability and to "insure that the costs of injuries resulting from defective

---

[1] The justifications for imposition of strict liability have been summarized as follows: (1) to provide compensation by spreading the risk; (2) satisfaction of the reasonable expectations of the purchaser or user, and (3) creating an impetus to the manufacture of better product, leading to over-all risk reduction. *Keith v Russell T. Bundy & Assoc., Inc.*, 495 So.2d 1223 (Fla. 5th DCA 1986), citing *Tillman v Vance Equipment Co.,* 286 Or. 747, 596 P.2d 1299 (1979).

products are borne by the manufacturers that put such products on the market rather that by the injured persons who are powerless to protect themselves," *Hardin v. Montgomery Elevator Co*, 435 So.2d 331, 333 (Fla. 2nd DCA 1983), quoting *Greenman v. Yuba Power Products, Inc*., 59 Cal. 2d 57, 63, 27 Cal. Rptr. 697, 701, 377 P.2d 897 (Cal. 1962).   Put another way, it is a rule of fairness designed to place the burden of accidental loss, as between two innocent parties, on the entity best able to absorb and prevent it.

   None of these interests support imposing strict liability upon the defendants in this case, who had no control over the type of insulation the Navy would choose and derived no revenue from sale of asbestos-containing products used aboard the *Essex*.  *See e.g.  Rastelli v Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289, 582 N.Y.373, 591 N.E.2d 222 (1992) (tire manufacturer not required to warn about use of its tire with potentially dangerous rims produced by another manufacturer where defendant did not contribute to alleged defect in tire rim, had no role in placing rim into stream of commerce and derived no benefit from its sale). Because defendants were not in the chain of distribution of the dangerous asbestos-containing products causing injury to Mr. Faddish, they cannot be charged with a duty to warn under negligence or strict liability theory.

   Further finding that reasonable persons could conclude only that the defendants' products were reasonably safe when sold without a warning of the dangers of asbestos exposure, the court shall grant the defendants' motions for summary judgment.

   It is accordingly **ORDERED and ADJUDGED:**

   1. The defendants' motions for summary judgment are **GRANTED.**

   2. Final summary judgment in favor of defendants and against plaintiff shall enter by separate order of the court pursuant to Rule 58.

**3.** In light of the foregoing, the parties' joint motion for hearing/status conference filed July 26, 2012 [ECF No. 157] is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 2nd day of August, 2012.

_____
Daniel T. K. Hurley
United States District Judge

21